**NOT FOR PUBLICATION**

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

|  |  |  |
|---|---|---|
| WILLIAM CLUVER, | : | |
| Plaintiff, | : | |
| v. | : | **Civil Action No. 10-3173 (MAS) (TJB)** |
| BOROUGH OF SAYREVILLE, et al., | : | **MEMORANDUM OPINION** |
| Defendants. | : | |

**SHIPP, District Judge**

      This matter comes before the Court upon Defendants Borough of Sayreville ("Sayreville") and Municipal Prosecutor Robert Prosecutor Blanda's ("Prosecutor Blanda") (collectively, the "Sayreville Defendants") Motion for Summary Judgment filed on March 23, 2012. (Sayreville Mot., ECF No. 24.) Defendant Detective Russell Anderson ("Detective Anderson") filed a separate Motion for Summary Judgment on that same day. (Anderson Mot., ECF No. 25.) Both motions seek dismissal of Plaintiff William Cluver's ("Plaintiff") Complaint in full. Plaintiff filed opposition to both motions on May 7, 2012. (Pl.'s Opp'n to Detective Anderson Mot., ECF No. 27; Pl.'s Opp'n to Sayreville Mot., ECF No. 28.) Letter-brief replies were filed by the Sayreville Defendants and Detective Anderson on May 14, 2012. (Sayreville Reply, ECF No. 29; Anderson Reply, ECF No. 30.) The Court has carefully considered the Parties' submissions and decided the matter without oral argument pursuant to Federal Rule of Civil Procedure ("Rule") 78. For the reasons stated below, and for other good cause shown, the

Sayreville and Anderson Motions are GRANTED and Plaintiff's case is DISMISSED WITH PREJUDICE.

## I.     Background

### A.     Factual History

Although the Parties to this case, Plaintiff in particular, allocate an impressive amount of energy discussing the extent to which certain facts in this case are material and disputed, the facts required to resolve this case are actually rather straightforward.

Plaintiff, a male in his early fifties when the events relevant to this action took place, has suffered from medical issues including glaucoma and cataracts in both eyes. (Anderson Br. 1 ¶¶ 1-5, ECF No. 25-1.) On October 20, 2008, Plaintiff was pulled over by a Sayreville police officer. (Sayreville Br. 5 ¶¶ 1-3, ECF No. 24-1.) Plaintiff's vehicle featured tinted windows which violated New Jersey motor vehicle laws. (*Id.*) Plaintiff did not have a medical exemption from the New Jersey Motor Vehicle Commission ("MVC") which would permit him to have tinted windows. (*Id.* ¶ 3.) Prior to that motor vehicle stop, Plaintiff had neither sought nor received a medical exemption allowing him to have tinted windows. (Anderson Br. 4 ¶ 24.) As a result of that stop, Plaintiff was issued a summons for driving a motor vehicle with tinted windows in violation of N.J. Stat. Ann. § 39:3-75 (2013). (*Id.* 3 ¶ 19.)

At the behest of Plaintiff, on November 14, 2008, Plaintiff's ophthalmologist, Dr. Stewart E. Wunsh, M.D. ("Dr. Wunsh"), "requested Plaintiff receive a medical exemption [from the MVC] for vehicle sun screening due to Plaintiff's 'persistent light reactivity' that required tinted windows and glasses." (*Id.* 4 ¶ 25.) The MVC granted the requested exemption on November 26, 2008. (*Id.* 4 ¶ 26.)

2

Case 3:10-cv-03173-MAS-TJB   Document 34   Filed 01/30/13   Page 3 of 24 PageID: 939

Plaintiff appeared, along with his attorney Leonard Leicht, Esq. ("Leicht"), on December 4, 2008, at the Sayreville Municipal Court to dispute the summons issued on October 20, 2008. (*Id.* 5 ¶¶ 28-29.) Leicht presented Municipal Judge Mark S. Cholowski, J.M.C. ("Judge Cholowski"), and Prosecutor Blanda with a copy of Plaintiff's Medical Exemption Card (the "Card") and requested that the above mentioned summons be dismissed. (*Id.* 5 ¶ 30.) Judge Cholowski granted the request and dismissed the summons. (*Id.* 5 ¶ 31.)

Shortly thereafter, on December 26, 2008, Leicht sent a letter to Sayreville stating that the summons issued to Plaintiff on October 20, 2008, was issued without probable cause. (*Id.* 5-6 ¶ 32.) The Borough considered this letter a Notice of Claim and forwarded such to its insurance provider, the Middlesex County Municipal Joint Insurance Fund (the "JIF"). (*Id.* 5-6 ¶¶ 32-33.) Following a series of communications between Leicht and Terry Delaney ("Delaney") of the JIF, Leicht forwarded a copy of the Card on April 16, 2009. (*Id.* 6-7 ¶¶ 34-39.) Delaney testified in her deposition that the copy of the Card forwarded to her did not have an issuance date on it. (Sayreville Br. 6 ¶ 9.) She then contacted Sayreville's then Police Chief Edward Szkodny ("Szkodny") who assigned Detective Anderson to investigate the circumstances surrounding the submission of the Card to the JIF, as well as the submission of the Card at the December 4, 2008 hearing.[1] (Anderson Br. 8 ¶ 45.)

---

[1] Plaintiff denies that the Card submitted to Delaney was altered. (Pl.'s Opp'n to Anderson Br. 10 ¶ 40.) Delaney testified that the Card was missing the issuance date. Leicht, on the other hand, stated that he faxed the Card with the issuance date. These conflicting statements, however, are no matter to the Court because Detective Anderson's actions, and whether or not probable cause existed for Plaintiff's eventual arrest, are drawn from and rely on the facts as presented by Delaney to Szkodny to Detective Anderson. The dispute is not a *material* dispute. Delaney testified that the version of the Card she received from Leicht did not have an issuance date and the version of the Card presented to Detective Anderson by Szkodny was the same as the copy of Card Delaney presented to Szkodny. (Pl.'s Opp'n to Sayreville Br. 4 ¶ 10.) An actual determination of who altered the Card presented to Delaney need not be resolved in order to determine if Detective Anderson had a reasonable belief that probable cause existed. The Court,

3

Detective Anderson's investigation consisted of several discrete steps. First, Detective Anderson received a copy of the Card directly from the MVC. (*Id.* ¶ 48.) The copy of the Card from the MVC had an issue date of November 26, 2008. (*Id.*) Second, Detective Anderson met with Dr. Wunsh who confirmed that he had requested the exemption for Plaintiff following the issuance of the original summons. (*Id.* ¶¶ 49-50.) Third, Detective Anderson contacted the Sayreville Municipal Clerk in order to investigate whether the Card as presented to the Municipal Court had an issue date. (*Id.* 8-9 ¶ 51.) He was advised that the summons, and only the summons, remained in the file and that the court did not have a copy of the Card as presented to the court on December 4, 2008. (*Id.*) Plaintiff disputes that the Municipal Court file did not contain a copy of the Card as submitted to the court. (Pl.'s Opp'n to Anderson Br. 12 ¶ 51.) Specifically, Plaintiff maintains that an investigator from the Middlesex County Prosecutor's Office stated that a copy of the Card with the issue date was present in the file.[2] (*Id.*) Detective Anderson's investigation did not include an interview of Leicht. (Pl.'s Opp'n to Sayreville Br. 13 ¶ 17.) Detective Anderson testified in his deposition that Assistant Prosecutor Mirtha Ospina ("Ospina") told him "that the Middlesex County Prosecutor's Office would handle any charges against Mr. Leicht." (Anderson Br. 10 ¶ 58.)

Following his investigation, Detective Anderson concluded that "probable cause existed that Plaintiff had committed a fraud on the Sayreville Municipal Court by having" the summons

---

as noted more fully below, is not required to conduct an independent probable cause analysis. Rather, the Court need only determine whether the facts *as presented and available to Detective Anderson* would lead another reasonable detective to determine probable cause existed.

[2] Similar to the "dispute" over whether the Card as received by Delaney was altered, whether a copy of the Card was located in the Municipal Court file is not a *material* dispute. The material fact which remains undisputed is that Detective Anderson was told by court staff that there was no copy of the Card in the court file. No further inquiry is required to determine if Detective Anderson was objectively reasonable in his subsequent finding that probable cause existed.

4

"dismissed based on a permit for an exemption that he had received from the [MVC] only *after* he received the summons, and that Plaintiff has attempted to commit insurance fraud, against the [JIF], using an altered [version of the Card]." (Anderson Br. 9 ¶ 53) (emphasis added). As part of that determination, Detective Anderson believed "that the issue date on the [Card] had been removed prior to its review by the Prosecutor and Judge." (*Id.* ¶ 54.)

Detective Anderson testified that he then consulted with Ospina "about whether there were sufficient facts to establish probable cause . . . ." (*Id.* 9-10 ¶¶ 55-57.) According to Detective Anderson, Ospina concurred that probable cause existed and recommended that Plaintiff be charged with: Falsifying or Tampering with Records, N.J. Stat. Ann. § 2C:21-4(a); Forgery and Related Offenses, N.J. Stat. Ann. § 2C:21-1(a)(1); and Insurance Fraud, N.J. Stat. Ann. § 2C:21-4.6(a). (*Id.* 10 ¶ 61.) Detective Anderson thereafter sought an arrest warrant from the Honorable James F. Weber, J.M.C. ("Judge Weber"), which was granted. (*Id.* ¶¶ 60-61.) Bail was set at $10,000. (*Id.* ¶ 62.)

Detective Anderson drew up a criminal complaint outlining the above noted charges, as well an arrest warrant which was faxed over to the Manalapan Police Department. (*Id.* 10-11 ¶¶ 64-66.) Plaintiff was arrested on May 6, 2009, and released on bail several hours later. (*Id.* 11 ¶¶ 67-70.) Before his release, Plaintiff was interrogated by Detective Anderson for several hours.

Several days later, on May 19, 2009, Prosecutor Blanda, at the request of Police Chief Szkodny or Detective Anderson, "wrote a letter to Municipal Judge Weber advising [the court] of the claim that [Plaintiff] had submitted a false document to the court on December 4, 2008." (Sayreville Br. 7 ¶ 17.) As part of that request, Prosecutor Blanda sought to have the October 20, 2008, summons reopened. (*Id.*) Prosecutor Blanda kept two separate offices, one as a private attorney and another as municipal prosecutor. He kept two respective sets of letterhead as well.

5

The letter sent to Judge Weber was sent on Prosecutor Blanda's private law practice letterhead. (Ex. L to Sayreville Br., ECF No. 24-5.) The letter itself, however, stated that Prosecutor Blanda was "making this request on the basis of the State . . . ." (*Id.*) Prosecutor Blanda took no further action regarding the matter and the Municipal Court did not reopen the matter. (Sayreville Br. 8 ¶ 18.)

The charges sought by Detective Anderson were referred to a grand jury by Ospina but were never reviewed by one. (Anderson Br. 12 ¶ 73; Ex. N. to Pl.'s Opp'n to Sayreville Br.) Pamela Jeffrey of the Middlesex County Prosecutor's Office conducted an investigation which revealed that the version of the Card submitted to the Municipal Court had the issuance date on it. (Sayreville Br. 8 ¶ 20; Pl.'s Opp'n to Sayreville Br. 8-9 ¶ 20.) Ultimately, on August 14, 2009, the criminal charges against Plaintiff were administratively dismissed. (Anderson Br. 13 ¶ 80.)

### B. Plaintiff's Complaint

Plaintiff's Complaint was filed on June 22, 2010, and names Sayreville, Prosecutor Blanda, Detective Anderson and several unnamed and fictitious defendants. (ECF No. 1.)

The first count is a 42 U.S.C. § 1983 claim. It names Detective Anderson and the Station Commander of the Sayreville Police Department (the "Station Commander") and alleges that probable cause did not exist for Plaintiff's arrest, thereby violating Plaintiff's Fourth Amendment rights. (Compl. ¶¶ 24-28.)

The second count names Sayreville and alleges Supervisory Liability for the actions of Detective Anderson which allegedly infringed on Plaintiff's Fourth and Fourteenth Amendment rights. Plaintiff claims that Sayreville should be subject to liability under the legal theory outlined in *Monell*[3] because Detective Anderson "acted pursuant to a formal policy and/or long

---

[3] *Monell v. Department of Social Services*, 436 U.S. 658 (1978).

accepted, standard operating procedure that resulted in violating Plaintiff's constitutional rights by arresting and/or imprisoning Plaintiff without probable cause." (Compl. ¶¶ 29-33.)

Count three names Sayreville and is captioned "§ 1983 Municipal Defendants Unlawful Policy, Custom, Practice/Inadequate Training." It alleges that Sayreville failed to properly train Detective Anderson and Prosecutor Blanda and thereby sanctioned their "unlawful, deliberate, malicious, reckless, and wanton conduct" which caused Plaintiff "physical injury, medical expenses, and mental anguish in connection with the deprivation of his constitutional rights . . . ." (Compl. ¶¶ 34-43.)

Count four alleges supplemental state law claims against Detective Anderson and the Station Commander for false arrest/imprisonment. (Compl. ¶¶ 44-48.)

Count five alleges a common law claim of malicious abuse of process against Detective Anderson, the Station Commander and Prosecutor Blanda. (Compl. ¶¶ 49-53.)

The sixth count alleges that Prosecutor Blanda, Detective Anderson and the Station Commander, through their false arrest/imprisonment and abuse of process, violated Plaintiff's rights under the New Jersey Civil Rights Act ("NJCRA"), N.J. Stat. Ann. § 10:6-1 et. seq. (Compl. ¶¶ 54-57.)

The seventh and final count alleges a civil conspiracy between Detective Anderson, Prosecutor Blanda, the Station Commander and an unnamed Defendant to "violate Plaintiff's right to be free from unreasonable search and seizure under the Fourth Amendment . . . ." (Compl. ¶¶ 58-61.)

## II.  **Legal Standard**

Summary judgment is appropriate if the record shows "that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P.

7

56(a). A district court considers the facts drawn from the "materials in the record, including depositions, documents, electronically stored information, affidavits . . . or other materials" and must "view the inferences to be drawn from the underlying facts in the light most favorable to the party opposing the motion." Fed. R. Civ. P. 56(c)(1)(A); *Curley v. Klem*, 298 F.3d 271, 276-77 (3d Cir. 2002) (internal quotations omitted). The Court must determine "whether the evidence presents a sufficient disagreement to require submission to a [trier of fact] or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby*, 477 U.S. 242, 251-52 (1986). More precisely, summary judgment should be granted if the evidence available would not support a jury verdict in favor of the non-moving party. *Id.* at 248-49. "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Id.* at 247-48.

## III. Analysis

### A. Detective Anderson

Detective Anderson moves for summary judgment dismissing Plaintiff's complaint on several grounds. First, Detective Anderson claims that he is entitled to qualified immunity because of his reasonable belief that probable cause existed for Plaintiff's arrest. Detective Anderson claims that his qualified immunity requires dismissal of all of the claims lodged against him. Second, he argues that Plaintiff's state law claims, e.g. false arrest/imprisonment, suffer from fatal flaws which require their dismissal.

#### 1) Qualified Immunity & Probable Cause

Qualified immunity "protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of

8

which a reasonable person would have known.'" *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). Two interests are balanced by the rule: "the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Id.* The Supreme Court has repeatedly "stressed the importance of resolving immunity questions at the earliest possible stage in litigation." *Hunter v. Bryant*, 502 U.S. 224, 227 (1991).

A qualified immunity analysis requires consideration of two concepts. "First, a court must decide whether the facts that a plaintiff has alleged . . . make out a violation of a constitutional right." *Pearson*, 555 U.S. at 232. "Second, if the plaintiff has satisfied this first step, the court must decide whether the right at issue was 'clearly established' at the time of defendant's alleged misconduct." *Id.* The second prong is only met when it would be "clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Saucier v. Katz*, 533 U.S. 194, 202 (2001). Although the inquiry is normally considered in that order, it need not be. *Id.* at 236.

Whether a public official's conduct is subject to qualified immunity is an issue of law to be decided by a judge. *Curley v. Klem*, 298 F.3d 271, 279 (3d Cir. 2002). However, "the existence of disputed, historical facts material to the objective reasonableness of an officer's conduct will give rise to a jury issue." *Id.* at 278 (citing *Sharrar v. Felsing*, 128 F.3d 810, 828 (3d Cir. 1997)). Once those issues are resolved by a jury, for example by "special jury interrogatories[,] . . . the court can then determine, as a matter of law, the ultimate question of qualified immunity." *Id.* at 279.

9

Here, Detective Anderson alleges that he is entitled to qualified immunity because the undisputed facts in this case support his probable cause determination, or alternatively, make clear that "a reasonable officer would have concluded that an arrest should have been effectuated if confronted with the facts known by Detective Anderson." (Anderson Br. 21.) Detective Anderson also relies upon his conversation with Ospina in which she allegedly told him that, believing the facts as conveyed to her, probable cause for Plaintiff's arrest existed. (*Id.* at 20.) Detective Anderson further refers to the fact that Judge Weber issued an arrest warrant as further proof that his determination that probable cause existed was reasonable. (*Id.* at 21.)

Plaintiff states that Detective Anderson's probable cause determination was not supported by the facts and that any reasonable detective would have known that.[4] Plaintiff's main arguments revolve around the facts supporting Detective Anderson's probable cause finding and whether they should be considered disputed. Plaintiff also contends that Ospina, in her deposition, was unable to confirm that her conversation with Detective Anderson regarding the existence of probable cause to arrest Plaintiff took place. Plaintiff further alleges that facts are disputed regarding the information that Szkodny conveyed to Detective Anderson. Plaintiff's alleged factual disputes are not material. Detective Anderson had, based upon undisputed facts, a sufficient objectively reasonable basis to conclude that probable cause existed to arrest Plaintiff.

---

[4] The legal argument contained in Plaintiff's Opposition to Detective Anderson's Motion for Summary Judgment is fifty-four (54) pages long. This is a violation of Local Civil Rule 7.2(b), which requires the legal arguments in briefs to be forty (40) pages or less. The Court did not grant permission for an over-length brief. Nor does the docket indicate that the magistrate judge assigned to this case granted such permission. *See* Magistrate Judge Tonianne J. Bongiovanni's Letter Order dated March 30, 2012, ECF No. 26 (granting Plaintiff an extension of time to file opposition to Defendants' motions but not addressing the issue of an over-length brief). Normally, the Court would be entitled to reject Plaintiff's Opposition Brief. The Court, however, will accept the brief and politely reminds Plaintiff's counsel to be aware of the requirements of Local Civil Rule 7.2(b) in the future.

As correctly noted by Detective Anderson, "[o]fficers can have reasonable, but mistaken, beliefs as to the facts establishing the existence of probable cause . . . and in those situations courts will not hold that they have violated the Constitution." *Saucier*, 533 U.S. at 206; *see also Anderson v. Creighton*, 483 U.S. 635, 641 (1987) ("law enforcement officials will in some cases reasonably but mistakenly conclude that probable cause is present, and we have indicated that in such cases those officials—like other officials who act in ways they reasonably believe to be lawful—should not be held personally liable."). "Only where the warrant application is so lacking in indicia of probable cause as to render official belief in its existence unreasonable . . . will the shield of immunity be lost." *Malley v. Briggs*, 475 U.S. 335, 344-45 (1986) (internal citation omitted).

Additionally, "a police officer who relies in good faith on a prosecutor's legal opinion that the arrest is warranted under the law is presumptively entitled to qualified immunity from Fourth Amendment claims premised on a lack of probable cause." *Kelly v. Borough of Carlisle*, 622 F.3d 248, 255-56 (3d Cir. 2010). That presumption is only rebutted "by showing that, under all the factual and legal circumstances surrounding the arrest, a reasonable officer would not have relied on the prosecutor's advice." *Id.* at 256.

Plaintiff seeks to directly attack this presumption by noting Ospina's lack of recollection of her purported conversation with Detective Anderson. This allegedly creates a disputed fact which must be resolved by a jury before the Court may pass on the legal question of Detective Anderson's qualified immunity. (Pl.'s Opp'n to Anderson Br. 25.) Detective Anderson, however, notes that Ospina did not deny that the conversation took place; she merely testified that she had no recollection of the matter. (Ospina Dep. Tr. 35:1-6, ECF No. 27-1.) She further stated that she "would believe" Detective Anderson if he said they had spoken. (*Id.* at 35:7-13.) More

11

importantly, "resolution" of this factual dispute, if it should even been considered one, is not required in order to determine if Detective Anderson's probable cause determination was objectively reasonable.

Probable cause exists when, based upon the totality of the circumstances, the facts support "a reasonable ground of suspicion . . . sufficient to warrant an ordinary prudent man in the same situation in believing that the party is guilty of the offense." *Chizmar v. Borough of Trafford*, 454 F. App'x 100, 106 (3d Cir. 2011); *United States v. May*, 87 F. App'x 223, 226 (3d Cir. 2003). In other words, probable cause to arrest exists where the evidence available to the arresting officer was "sufficient to warrant a prudent man in believing that the (suspect) had committed or was committing an offense." *Beck v. Ohio*, 379 U.S. 89, 91 (1964). Therefore, Detective Anderson "will not be immune if, on an objective basis, it is obvious that no reasonably competent officer would have concluded that" probable cause existed. *Malley*, 475 U.S. at 341. Finally, the "ultimate finding of guilt or innocence, or even dismissal of charges arising out of an arrest and detention has no bearing on whether [probable cause for an arrest existed at the time the arrest took place]." *Pansy v. Preate*, 870 F. Supp. 612, 617 (M.D. Pa. 1994), *aff'd*, 61 F.3d 896 (3d Cir. 1995) (citing *Pierson v. Ray*, 386 U.S. 547, 555 (1967)).

The Court, without recourse to Ospina's purported blessing that probable cause existed, determines as a matter of law that Detective Anderson's finding of probable cause is subject to qualified immunity because it could have been arrived at by another reasonable detective and was not the result of a plainly incompetent investigation. Regardless of whether another detective would have conducted the investigation in question differently, it cannot be reasonably stated that, based upon the totality of the circumstances, Detective Anderson lacked reasonable grounds to suspect that a fraud had possibly been committed upon the Municipal Court and the JIF. This

12

decision is further supported by the fact that Detective Anderson's determination can be mistaken and still be subject to the protection of qualified immunity. *See Saucier*, *supra*, and *Anderson*, *supra*. Recourse to four undisputed facts is required to reach this conclusion.

First, it is undisputed Skodzny told Detective Anderson that the version of the Card forwarded to the JIF lacked an issuance date. (Pl.'s Opp'n to Sayreville Br. 4 ¶ 10.) Second, it is undisputed that the version of the Card that Detective Anderson obtained from the MVC contained an issuance date. (Anderson Br. 8 ¶ 48.) Third, Plaintiff's doctor requested the Card following the issuance of the original summons. (*Id.* ¶¶ 49-50.) Fourth, Detective Anderson, when he attempted to obtain a copy of the Card from the Municipal Court, was told that one did not exist and that only the summons remained in the file. (*Id.* 8-9 ¶ 51.)

Presented with these facts, Detective Anderson concluded that Plaintiff, or someone acting at his behest and towards his benefit, had attempted to commit a fraud upon both the Municipal Court and the JIF. That conclusion was not unreasonable. Furthermore, Detective Anderson did not execute an arrest without further review of the matter. It is undisputed that Detective Anderson then obtained an arrest warrant from Judge Weber. (*Id.* ¶¶ 60-61.) In light of these facts, even when viewed in the light most favorable to Plaintiff, the Court is not willing to find that Detective Anderson's investigation was so "plainly incompetent" that Detective Anderson should not be entitled to qualified immunity. This conclusion requires the Court to dismiss Plaintiff's first count with prejudice.

### 2) **Plaintiff's False Arrest/Imprisonment Claim**

The Court's determination that it was reasonable for Detective Anderson to conclude that probable cause existed requires that Plaintiff's state law claim based upon false arrest/imprisonment be dismissed. This is so because false arrest/imprisonment claims are

13

obviated when it is determined that a defendant law enforcement official has acted with probable cause. *See Hayes v. Mercer County*, 217 N.J. Super. 614, 623 (N.J. Super. Ct. App. Div. 1987) (existence of probable cause extinguishes a claim for false arrest/imprisonment). As such, Count IV of Plaintiff's complaint is dismissed with prejudice.

### B.   Claims Against Detective Anderson and Prosecutor Blanda

Three claims feature both Detective Anderson and Prosecutor Blanda as named parties and are more appropriately addressed in tandem. The first is malicious abuse of process. The next is Plaintiff's NJCRA claim. The final is Plaintiff's civil conspiracy claim.

#### 1)   Malicious Abuse of Process

Common law malicious abuse of process claims seek to hold a defendant liable for "the improper, unwarranted, and perverted use of process *after* it has been issued . . . ." *Ash v. Cohn*, 119 N.J.L. 54, 58 (N.J. 1937) (emphasis added). A successful malicious abuse of process claim requires a Plaintiff to demonstrate "(1) that defendants made an improper, illegal, and perverted use of the process, i.e., a use neither warranted nor authorized by the process; and (2) that in use of such a process there existed an ulterior motive." *Id.* Essentially, "the test is . . . whether the process has been used to accomplish some unlawful end, or to compel defendant to do some collateral thing which he could not legally be compelled to do." *Ortiz v. Ocean County Prosecutor's Office*, No. 03-3732 (SRC), 2006 WL 2938825, at *5 (D.N.J. Oct. 13, 2006) (citing *Ash*, 119 N.J.L. at 59). As noted in *Ash*, special concern is directed to an inquiry whether the defendant has engaged in "further acts," for example following a party's arrest, which indicate the existence of the ulterior motive. *See Penwag Prop. Co., Inc. v. Landau*, 148 N.J. Super. 493, 499 (N.J. Super. Ct. App. Div. 1977) ("Coercive action or bad motives or intent *prior* or leading to the institution of the lawsuit do not suffice to expose a plaintiff to a cause of action for

malicious abuse of process.") (emphasis added), *aff'd*, 76 N.J. 595 (1978)). Plaintiff's malicious

abuse of process claim fails.

> Here, Plaintiff's Complaint alleges that following his arrest, Detective Anderson
>
> thereafter made representations of facts relating to . . . [Plaintiff's] previous involvement with the court and/or his subsequent arrest and detention; falsified police and/or other official records, and mishandled and/or withheld evidence during the investigation and prosecution of the Plaintiff in order to gain an advantage over Plaintiff's certain constitutional claims and/or to protect themselves from criminal prosecution and civil liability.

(Compl. ¶ 51.) This accusation was further focused in Plaintiff's Opposition Brief. Plaintiff

raises several concerns, specifically the "line of questioning" which Plaintiff was subjected to by

Detective Anderson following his arrest.[5] Plaintiff states that Detective Anderson's alleged

ulterior motive can be inferred from the fact that "Detective Anderson spent significant time,

following Mr. Cluver's arrest, questioning Mr. Cluver as to why he did not pay the original

tinted windows fine . . . and why Mr. Cluver 'sued the borough.'" (Pl.'s Opp'n to Anderson Br.,

52.)

The Court has reviewed the portion of the interrogation transcript which Plaintiff alleges

indicates Detective Anderson's ulterior motive and does not find that a jury could infer from that

exchange that Detective Anderson was acting with an ulterior motive and was maliciously

abusing process. The transcript, rather, indicates that Detective Anderson (who the Court has

---

[5] Plaintiff's Opposition Brief also discusses Detective Anderson's investigation and interaction with Ospina. Those actions, however, do not fall within the ambit of a malicious abuse of process claim because they occurred before Plaintiff's arrest. As such, they do not warrant further discussion. Moreover, Plaintiff states that the determination by Judge Weber to set his bail at "$10,000 with no 10% option" could, when viewed in the light most favorable to Plaintiff, create an issue of fact regarding the ulterior motives of Detective Anderson. Even assuming the $10,000 bail was an abuse of process, Plaintiff has failed to proffer any evidence that Detective Anderson had any role in setting the bail. Because this decision solely rested with Judge Weber, who is not a party to this case, and Plaintiff fails to proffer any evidence that Detective Anderson's actions affected the amount of bail, this contention requires no further discussion.

determined had probable cause to suspect that a crime may have been committed) was attempting to assess Plaintiff's possible motive to commit the alleged fraud. There is simply nothing in the quoted transcript, or the record before the Court, to indicate that Detective Anderson maliciously abused process or was motivated by an ulterior motive during his interrogation of Plaintiff. As such, Count IV of Plaintiff's complaint, as it relates to Detective Anderson, is dismissed with prejudice.

Plaintiff further alleges that Prosecutor Blanda's action in reopening the underlying tinted windows summons is further proof that malicious abuse of process exists in this case. (Pl.'s Opp'n to Anderson Br. 57; Pl.'s Opp'n to Sayreville Br. 30.) This allegation is not supported by the undisputed facts before the Court. It is not reasonable to infer that Prosecutor Blanda was acting with an ulterior motive when he requested that the original summons be reopened, when as previously noted, there was probable cause to believe that the initial summons may have been dismissed based upon the criminally fraudulent activity of Plaintiff. Plaintiff's claim of malicious abuse of process cannot be sustained and is hereby dismissed.

### 2) Plaintiff's New Jersey Civil Rights Act Claim

Plaintiff claims that Detective Anderson and Prosecutor Blanda, through their alleged false arrest/imprisonment and malicious abuse of process "deprived Plaintiff of his substantive due process right to be free from unlawful seizure of his person and his fundamental right to liberty as secured by the" United States and New Jersey Constitutions in violation of the NJCRA, N.J. Stat. Ann. 10:6-2. (Compl. 13 ¶ 55.)

Plaintiff's claims which allege a violation of the NJCRA are directly controlled by the Court's determination that probable cause for Plaintiff's arrest existed and Detective Anderson is therefore entitled to qualified immunity. *See Trafton v. City of Woodbury*, 799 F. Supp. 2d 417,

16

443 (D.N.J. 2011) ("This district has repeatedly interpreted NJCRA analogously to § 1983."); *Sussino v. New Jersey Div. of State Police*, No. 09-6278 (SRC), 2012 WL 5184582, at \*8 (D.N.J. Oct. 18, 2012) (holding that a finding of qualified immunity in the context of a § 1983 claim is a defense to claims brought under the NJCRA); *Williams v. New Jersey Div. of State Police,* No. 10-3478 (DRD), 2012 WL 1900602, at \*15 (D.N.J. May 24, 2012) ("[T]he defense of qualified immunity is appropriate to claims arising under the NJCRA, based on the history of NJCRA and the Court's prior decisions applying the defense as an extension of a Section 1983 analysis."); *see also Ramos v. Flowers*, A-4910-10T3, 2012 WL 4208699, at \*5 (N.J. Super. Ct. N.J. Super. Ct. App. Div. Sept. 21, 2012) (holding that the New Jersey "Legislature anticipated that New Jersey courts would apply the well-established law concerning the affirmative defense of qualified immunity in adjudicating damage claims under the [NJCRA]."). In light of these cases' holdings, Plaintiff's claim under the NJCRA is dismissed with prejudice pursuant to the Court's determination that Detective Anderson is entitled to qualified immunity regarding his probable cause determination.

Plaintiff's NJCRA claim against Prosecutor Blanda also fails because, as noted above, there is no merit to the malicious abuse of process claim under the common law. Since Plaintiff has put forth only two bases to find a violation of the NJCRA, both of which have been dismissed by the Court, those claims cannot sustain a claim under the NJCRA.[6] As such, Plaintiff's NJCRA claim is dismissed with prejudice against Detective Anderson and Prosecutor Blanda.

---

[6] To the extent Plaintiff's NJCRA claim against Detective Anderson is based upon malicious abuse of process, that claim fails. The common law claim is lacking as to both named Defendants. It cannot, therefore, sustain a NJCRA claim against either of them.

17

### 3)    Plaintiff's Civil Conspiracy Claim

Count VII of the Complaint alleges that Detective Anderson and Prosecutor Blanda "acted with a common purpose to violate Plaintiff's rights to be free from unreasonable search and seizure under the Fourth Amendment . . . and the right to be free of the deprivation of liberty under the Fourteenth Amendment . . . [as] protected by 42 U.S.C. § 1983." A civil conspiracy requires "a combination of two or more persons acting in concert to commit an unlawful act, or to commit a lawful act by unlawful means, the principal element of which is an agreement between the parties to inflict a wrong against or injury upon another, and an overt act that results in damage." *Morgan v. Union Cnty. Bd. of Chosen Freeholders*, 268 N.J. Super. 337, 364 (N.J. Super. Ct. App. Div. 1993) (internal quotation marks omitted) (citing *Rotermund v. U.S. Steel Corp.*, 474 F.2d 1139, 1145 (8th Cir. 1973)).

While Plaintiff is correct that direct evidence of a conspiracy is typically difficult to obtain and that the issue should not be taken from a jury so long as circumstantial evidence can support the inference that a conspiracy existed, Plaintiff is still required to adduce "sufficient evidence to warrant a jury determination [that a] conspiracy existed." *See Hampton v. Hanrahan*, 600 F.2d 600, 621 (7th Cir. 1979), *cert. granted in part, judgment rev'd in part*, 446 U.S. 754 (1980). Plaintiff's bald assertion that Detective Anderson, by requesting that Prosecutor Blanda seek to reopen the underlying tinted windows summons, conspired to "harass, embarrass, and continue Mr. Cluver's ordeal with the court as long as possible," (Pl.'s Opp'n to Sayreville Br. 32), is not supported by the undisputed record before the Court. In fact, the record before the Court indicates that the opposite inference must be accepted. As noted above, Detective Anderson had probable cause to suspect that a fraud may have been committed upon the Court. It was, therefore, completely reasonable for Detective Anderson to request that Prosecutor Blanda

18

contact the Municipal Court in order to have the original summons reopened and possibly readjudicated. There is no evidence that Detective Anderson and Prosecutor Blanda sought to "inflict a wrong against or injury upon" Plaintiff. No jury could find otherwise. As such, Count VII is dismissed with prejudice as to both Detective Anderson and Prosecutor Blanda.

## C.   Prosecutor Blanda's Assertion of Absolute Immunity

In addition to his substantive opposition to the claims in which he is named, Prosecutor Blanda also asserts that he is entitled to absolute immunity from all of the § 1983 claims lodged by Plaintiff. (Sayreville Br. 13-15 (citing *Imbler v. Pachtman*, 424 U.S. 409, 427 (1976).) Plaintiff argues that Prosecutor Blanda was acting outside the scope of his prosecutorial role when he sent the letter to the Municipal Court requesting that the underlying tinted windows summons be reopened. (Pl.'s Opp'n to Sayreville Br. 27-29.) This supposedly strips Prosecutor Blanda of the right to claim absolute immunity.

The court rejects Plaintiff's contention. As noted above, while Prosecutor Blanda may have sent the letter requesting that the summons be reopened on his private firm letterhead, the text of the letter itself makes it clear that Prosecutor Blanda was acting in his prosecutorial capacity. Prosecutor Blanda, therefore, is entitled to absolute immunity from the Plaintiff's civil conspiracy claim (the only claim which names Prosecutor Blanda and is predicated on a purported violation of § 1983).

## D.   Claims Against the Borough of Sayreville

Plaintiff has alleged five counts against Sayreville. Count II alleges that Sayreville has supervisory liability for the actions of Detective Anderson and the Sayreville Police Department. Count III alleges in a § 1983/*Monell* claim that Sayreville, via unlawful policies, customs, practices   and   inadequate   training,   violated   Plaintiff's   rights.   Counts   IV   (false

19

arrest/imprisonment), V (malicious abuse of process), and VI (violation of the NJCRA) all allege

that Sayreville is "vicariously liable" for the actions of the individual defendants named in those

counts. As explained below, municipal entities cannot be held vicariously liable solely for

wrongdoing of their agents and employees. *See Monell*, 436 U.S. at 707; *Bd. of County Com'rs*

*of Bryan County, Okl. v. Brown*, 520 U.S. 397, 403 (1997). Therefore, Counts IV, V, and VI will

be considered dismissed against Sayreville.

### 1) Plaintiff's Supervisory Liability Claim

Count II seeks to hold Sayreville liable under a theory of supervisory liability. It fails.

"To state a claim of supervisory liability" under § 1983, a plaintiff must prove that the alleged

tortfeasor was "directed to violate" the plaintiff's constitutional rights by his superiors. *Santiago*

*v. Warminster Twp.*, 629 F.3d 121, 130 (3d Cir. 2010). This can be demonstrated by showing

that the "supervisor gave directions that the supervisor 'knew or should reasonably have known

would cause others to deprive the plaintiff of [his] constitutional rights.'" *Id.* Critically, "any

claim that supervisors directed others to violate constitutional rights necessarily includes as an

element an actual violation at the hands of subordinates." *Id.*

Here, and as noted above, no violation of Plaintiff's constitutional rights has occurred.

Furthermore, there is no evidence of record which indicates that any figure in a supervisory

capacity with Sayreville or the Sayreville Police Department instructed anyone to violate

Plaintiff's rights or should have known that their actions would cause others to deprive Plaintiff

of his constitutional rights. As such, Count II of Plaintiff's complaint is dismissed with prejudice.

### 2) Plaintiff's *Monell* Claim

A claim brought against a municipality under § 1983 can only be successful where the

"municipality *itself* causes the constitutional violation at issue." *City of Canton, Ohio v. Harris*,

489 U.S. 378, 385 (1989) (citing *Monell*, 436 U.S. at 694 ("[A] local government may not be sued under § 1983 for an injury inflicted solely by its employees or agents.")). Municipalities, rather, may only be held liable "when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983." *Id.*

As an initial matter, there must be a "direct causal link between a municipal policy or custom and the alleged constitutional deprivation." *Canton*, 489 U.S. at 385. Here, there can be no direct causal link because there has been no constitutional deprivation. As described in detail above, Detective Anderson was reasonable in his determination that probable cause to arrest Plaintiff existed. Lacking any threshold constitutional violation, Plaintiff's derivative *Monell* claim also fails.

While this finding would normally curtail further discussion of this issue, the Court will address Plaintiff's failure to train legal theory in order to create a complete record. Plaintiff alleges that Sayreville is liable under § 1983 for two reasons, both of which depend upon Sayreville's alleged failure to train its agents and employees sufficiently.

First, Sayreville allegedly failed to adequately train Detective Anderson and should have assigned a detective from the Criminal Investigation Division to handle investigation of Plaintiff's case. Specifically, Szkodny "chose a detective that was not properly trained for a fraud or forgery investigation, and did not have the work experience to conduct a proper fraud or forgery investigation." (Pl.'s Opp'n to Sayreville Br. 19.) Second, Sayreville allegedly improperly trained its Municipal Court staff to adequately retain records of the underlying summons. (*Id.* 21-24.) Plaintiff contends that if the records were retained as required by state

21

law, Detective Anderson would have been provided with the Card as submitted to the Municipal Court, which contained the issuance date, and Plaintiff's arrest would not have occurred.

"[T]he inadequacy of police training may serve as the basis for § 1983 liability only where the failure to train amounts to *deliberate indifference* to the rights of persons with whom the police come into contact." *Canton*, 489 U.S. at 388 (emphasis added). The focus is on the "adequacy of the training program in relation to the tasks the particular officers must perform." *Id.* at 390. The fact that "a particular officer may be unsatisfactorily trained will not alone suffice to fasten liability on the city, for the officer's shortcomings may have resulted from factors other than a faulty training program." *Id.* at 390-91. "Neither will it suffice to prove that an injury or accident could have been avoided if an officer had had better or more training, sufficient to equip him to avoid the particular injury-causing conduct" because "adequately trained officers occasionally make mistakes [and] the fact that they do says little about the training program or the legal basis for holding the city liable." *Id.* at 391. "To adopt lesser standards of fault and causation would open municipalities to unprecedented liability under § 1983." *Id.*

"'[D]eliberate indifference' is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action."*Connick v. Thompson*, 131 S. Ct. 1350, 1360 (2011) (quoting *Bryan County*, 520 U.S. at 409). A plaintiff's claim is at its most "tenuous" when it "turns on [an allegation of] a failure to train." *Id.* at 1359. A failure to train can be inferred when it leads to a series of actions which violate constitutional rights or single instance in which a right is violated. *Id.* at 1361.

Regarding the alleged failure to adequately train Detective Anderson, Plaintiff's argument is lacking in several regards. First, he misunderstands *Canton*. *Canton* did not find that a "single incident of training led to a § 1983 violation when police officers, armed with firearms,

22

were sent into a public space to arrest potentially armed and violent criminals." (Pl.'s Opp'n to Sayreville Br. 16.) That was only a hypothetical discussed by the *Canton* court. The actual facts of *Canton* involved a woman's claim that police officials denied her medical care following her arrest. *Canton*, 489 U.S. at 381. Moreover, to the extent that *Canton* did discuss the theory of failure to train liability predicated on a single act, that threshold has not been met in this case.

Again, as noted above, there has been no violation of Plaintiff's rights. Further, there is simply no basis by which a reasonable jury could conclude Plaintiff's arrest was a "known or obvious consequence" of Szkodny's decision to assign Detective Anderson to the case because Detective Anderson lacked explicit training regarding fraud investigations. While Detective Anderson may have not had previous experience in fraud investigations, he is a detective with over fifteen (15) years of experience. (Anderson Br. 2 ¶ 10.) Finally, and as noted above, it does not "suffice to prove that an injury or accident *could* have been avoided if an officer had had better or more training, sufficient to equip him to avoid the particular injury-causing conduct" because "adequately trained officers occasionally make mistakes [and] the fact that they do says little about the training program or the legal basis for holding the city liable." *Canton*, 489 U.S. at 391. Therefore, even though Detective Anderson's determination that there was probable cause to suspect that a crime was committed did not result in a conviction, that mistake alone does not constitute evidence of a failure to train sufficient to underpin a § 1983 *Monell/Canton* claim.

Regarding the failure to train the Municipal Court employees, several flaws in Plaintiff's theory are evident. First, and as noted by Sayreville, the Municipal Court staff fall under the aegis of the State of New Jersey. *See In re Raphael*, 238 B.R. 69, 81 (D.N.J. 1999); *Squeo v. Borough of Carlstadt*, 296 N.J. Super. 505, 512 (N.J. Super. Ct. App. Div. 1997) ("The

23

municipal court and its personnel are an integral part of the judicial system, not of municipal government."). Second, also argued by Sayreville, the fact that Detective Anderson may have received a copy of the Card from the Municipal Court with the issuance date on it if the staff had retained the records as required does not mean that probable cause to arrest Plaintiff as to the insurance fraud claim did not exist. Finally, there is no basis to conclude that this alleged failure to train, even if it were Sayreville's, rises to the level of "deliberate indifference" such that this alleged violation should have been anticipated by Sayreville.

## IV.   Conclusion

For the reasons set forth above, and for other good cause shown, it is hereby ordered that Detective Anderson, Prosecutor Blanda and Sayreville's Motions for Summary Judgment are GRANTED. Plaintiff's Complaint is DISMISSED WITH PREJUDICE. An Order consistent with this Opinion will be entered.

MICHAEL A. SHIPP
UNITED STATES DISTRICT JUDGE

Dated: January 28, 2013